IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-94-D

LRP HOTELS OF CAROLINA, LLC,          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          **ORDER**
                                      )
WESTFIELD INSURANCE COMPANY,          )
                                      )
            Defendant.                )

On March 11, 2013, LRP Hotels of Carolina, LLC ("LRP" or "plaintiff") filed a complaint against Westfield Insurance Company ("Westfield" or "defendant") in Lenoir County Superior Court. See Compl. [D.E. 1-1]. The dispute involves an insurance claim that LRP filed with Westfield concerning damage LRP's hotel in Kinston, North Carolina allegedly sustained in August 2011 due to Hurricane Irene. LRP asserts the following claims against Westfield: (1) breach of contract; (2) unfair and deceptive trade practices; (3) breach of covenant of good faith and fair dealings; (4) fraud; (5) negligent misrepresentation; and (6) negligence. See Compl. ¶¶ 35–77. On April 16, 2013, Westfield timely removed the action based on diversity jurisdiction. See [D.E. 1]. On June 30, 2014, Westfield moved for partial summary judgment concerning: (1) a portion of the breach of contract claim; (2) the unfair and deceptive trade practices claim; (3) the breach of covenant of good faith and fair dealing claim; (4) the fraud claim; (5) the negligent misrepresentation claim; and (6) the negligence claim [D.E. 26]. On July 21, 2014, LRP responded in opposition [D.E. 30]. On August 4, 2014, Westfield replied [D.E. 31]. On October 31, 2014, the court heard oral argument. As explained below, the court grants Westfield's motion for partial summary judgment.

In August 2011, LRP purchased a hotel in Kinston, North Carolina. See Marupov Dep. [D.E. 29-2] 5 (p. 25 of deposition). The hotel was built in 1986. See McClancey Dep. [D.E. 29-4] 3 (p. 39 of deposition). Before purchasing the hotel, LRP did not retain anyone to inspect the hotel. See Patel Dep. [D.E. 29-3] 3 (p. 21 of deposition). LRP was unaware of the age or the service life of the hotel's roof or windows. Id. 12-14 (pp. 40–42 of deposition).

LRP purchased insurance from Westfield concerning the hotel. See [D.E. 29-5] 1–183 (copy of insurance policy). On August 27, 2011, Hurricane Irene hit Kinston, North Carolina and damaged the hotel. See Compl. ¶ 9. LRP made an insurance claim for damages to the hotel. See id. ¶ 13. Within ten days of the claim, Westfield retained an independent engineer (Rimkus Consulting Group), an independent general contractor (Forney & WeyGant), and an independent accountant (Sanderford & Associates, P.A.) to inspect the hotel and analyze the damage.

Rimkus Consulting Group opined that Hurricane Irene caused certain damage to the roof, the exterior fence in the pool area, and the exterior storage building. See Rimkus Report [D.E. 29-6] 1–54; [D.E. 29-7] 1–5. Rimkus Consulting Group also opined that Hurricane Irene did not cause some of the claimed damage, including damage to some windows and water damage in some rooms. See [D.E. 29-6] 5–6, 14–16.

After Westfield investigated the claim, Westfield determined that LRP suffered covered losses of $24,958.63. After deducting $1,000 for the deductible, Westfield paid LRP $23,958.63. See [D.E. 29-8] 2–3. The covered damages that Westfield paid for were $20,854.36 for building repairs (less the $1,000 deductible), $720 for sign repair, $1,441.89 for a card reader, and $942.38 for spoiled food. See id. LRP contends that covered damages to the hotel far exceed $24,958.63. On March 6, 2013, LRP filed this suit.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The court has jurisdiction based on diversity, and North Carolina law governs plaintiff's claims. Thus, this court must determine how the Supreme Court of North Carolina would rule. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North] Carolina has spoken neither directly or indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue." Id. (quotation omitted). In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. Id.

A.

LRP contends that Westfield breached its contract with LRP by failing to pay for all covered losses under the insurance policy. See Compl. ¶¶ 34–37. In order to prove breach of contract under North Carolina law, a plaintiff must prove (1) the existence of a valid contract, and (2) a breach of the terms of the contract. See, e.g., McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), disc. rev. denied, 360 N.C. 290, 627 S.E.2d 621 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). An insurance policy is a contract, and the policy's provisions govern the

3

rights and duties of the contracting parties. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., Inc., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990).

In LRP's breach of contract claim, LRP contends that Westfield had a duty under the policy to investigate and pay policy benefits for covered storm damage resulting from wind, rain, and water intrusion relating to or arising out of Hurricane Irene. See Compl. ¶¶ 34–37. LRP contends that Hurricane Irene caused extensive covered storm damage, including damage to: (1) the roof; (2) interior rooms; (3) the pool area; (4) a storage area; (5) trees; (6) a card reader; (7) the Hampton Inn sign; (8) food; and, (9) HVAC units. See id. ¶¶ 9–10; Marupov Dep. 43–44, 49–50, 58–59, 69; Patel Dep. 37; McClancy Expert Report [D.E. 29-9]–[D.E. 29-13]. LRP also contends that it lost revenue and incurred extra expenses for LRP employees. Patel Dep. 30. LRP contends that Westfield breached the insurance contract when it refused to pay for covered storm damage.

Westfield responds that, other than the roof, it paid for all covered storm damages under the policy. See Def's Br. in Supp. of Mot. for SJ. [D.E. 29] 12. As for the roof, Westfield contends that the parties have a legitimate dispute about what damage is covered. See id. 6–7, 13.

At oral argument, the court concluded that the only genuine issue of material fact that remains in the case concerns damage to the roof. The other alleged damages have been paid, are not covered, or LRP has failed to raise a genuine issue of material fact.

B.

LRP contends that Westfield committed unfair and deceptive trade practices by misrepresenting portions of the insurance coverage, failing to act reasonably in response to LRP's claim, failing to handle the claim in good faith, and failing to pay what was due under the policy. See Compl. ¶¶ 38–45. In order to prove a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1–75-43, a plaintiff must prove "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff

4

was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). Under the UDTPA, a plaintiff must prove that defendants' conduct was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Blvd. at Piper Glen, LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Essentially LRP argues that Westfield acted unfairly and deceptively in breaching the policy's terms. See Pl's Br. in Opp. [D.E. 30] 9. Specifically, LRP contends that Westfield acted unfairly in relying on the "biased inspection" of the experts that Westfield retained to evaluate LRP's claim. See id.

In evaluating a UDTPA claim, courts must guard against permitting a litigant to transform a breach of contract claim into a UDTPA claim. Birtha v. Stonemor, N.C., LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012); see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998). "Mere breach of contract is not sufficient to sustain" a UDTPA claim unless "the breach is surrounded by substantial aggravating circumstances." Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558; see Birtha, 727 S.E.2d at 10 (noting that even an intentional breach of contract "is not sufficiently unfair or deceptive" to sustain a UDTPA action). Moreover, a fundamental disagreement between the parties about a contract's terms and coverage is not a "substantial aggravating circumstance[]." Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558; see PCS Phosphate Co., 559

5

F.3d at 224; Broussard, 155 F.3d at 346–47.

Even viewing the evidence in the light most favorable to LRP, Westfield did not commit an act that was unfair or deceptive under the UDTPA. The court rejects LRP's attempt to transform its breach of contract claim into a UDTPA claim. Accordingly, the court grants summary judgment to Westfield on LRP's UDTPA claim.

C.

LRP contends that Westfield breached a covenant of good faith and fair dealing in the insurance contract by failing to pay the amount due on the claim without any reasonable basis and by failing to conduct a reasonable investigation. See Compl. ¶¶ 46–51. To prevail on this claim, LRP must prove:

> 1) a refusal to pay after recognition of a valid claim; 2) "bad faith"; and 3) "aggravating or outrageous conduct." "'Bad faith' means not based on a legitimate, 'honest disagreement' as to the validity of the claim. 'Aggravated conduct' is defined to include fraud, malice, gross negligence, insult . . . willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights."

Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006) (citations omitted).

LRP concedes that an "honest disagreement" or an "innocent mistake" is insufficient to prove a breach of covenant of good faith and fair dealing. See Pl.'s Br. in Opp. 10. LRP argues, however, that its breach of covenant of good faith and fair dealing claim "revolves around [Westfield's] wrongful conduct in purposefully manipulating the expert inspection reports and twisting the truth to avoid large expenses due and rightfully owed . . . ." Id.

LRP cites no evidence in support of its argument. See id. At summary judgment, however, a party disputing a fact must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In contrast to LRP,

6

Westfield cites evidence that defeats LRP's breach of covenant of good faith and fair dealing contract claim. Specifically, LRP's owner Patel testified that he had no opinion concerning whether Westfield failed to act in good faith. See Patel Dep. 35. Similarly, LRP's agent Marupov testified that LRP and Westfield had an honest disagreement about the damages covered under the policy. See Marupov Dep. 46. On this record, the court grants summary judgment to Westfield on LRP's claim of breach of covenant of good faith and fair dealing. See, e.g., Blis Day Spa, LLC, 427 F. Supp. 2d at 631–34; Olive v. Great Am. Ins. Co., 76 N.C. App. 180, 185–191, 333 S.E.2d 41, 44–47 (1985).

## D.

LRP contends that Westfield committed fraud by making false representations to LRP concerning damage to the hotel, causes for the damage, and coverage under the policy. See Compl. ¶¶ 52–61. To prove fraud under North Carolina law, a plaintiff must prove: (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) that did in fact deceive, and (5) resulted in damage to the injured party. Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974); Ellison v. Alexander, 700 S.E.2d 102, 107 (N.C. Ct. App. 2010).

LRP contends that Westfield committed fraud by relying on portions of the Rimkus Consulting Group report that Westfield knew to be inaccurate. See Pl.'s Br. in Opp. 11. However, LRP fails to specify those "false" portions of the Rimkus Consulting Group report that Westfield knew were false and relied upon to deny the claim. Id.; cf. Fed. R. Civ. P. 56(C)(1)(A). Thus, LRP's argument fails.

LRP also contends that Westfield misrepresented the policy to LRP. See Pl's Br. in Opp. 11. Patel's testimony and Marupov's testimony defeat this contention. See Patel Dep. 33; Marupov Dep. 34. Accordingly, this argument fails. Thus, the court grants summary judgment to Westfield on LRP's fraud claim.

7

E.

LRP contends that Westfield made negligent misrepresentations to LRP while inspecting the hotel and adjusting the claim. See Compl. ¶¶ 62–68. LRP also alleges that Westfield negligently reviewed and adjusted LRP's claim. See id. ¶¶ 69–77.

As for LRP's negligent misrepresentation claim, LRP must prove: (1) in the course of a business or other transaction in which a party has a pecuniary interest, (2) defendant supplied false information (3) without exercising reasonable care in obtaining or communicating the information and (4) plaintiff reasonably relied on the information to its detriment. See, e.g., Taylor v. Gore, 161 N.C. App. 300, 303, 588 S.E. 2d 51, 54 (2003); Piedmont Inst. of Pain Mgt. v. Staton Found., 157 N.C. App. 577, 586, 581 S.E.2d 68, 74 (2003); Everts v. Parkinson, 147 N.C. App. 315, 328, 555 S.E.2d 667, 676 (2001).

Westfield dealt only with LRP's owner Rajendra Patel and LRP employee Murod Marupov. See Patel Dep. 31–32; Marupov Dep. 32. Each admits, however, that they are unaware of any misrepresentations that Westfield made to them. See Patel Dep. 32, 35; Marupov Dep. 34, 46. Thus, the court grants summary judgment to Westfield on LRP's negligent misrepresentation claim.

Alternatively, North Carolina's economic loss rule bars plaintiff's negligent misrepresentation and negligence claims. North Carolina courts have applied the economic loss rule to prohibit recovery for purely economic loss in tort when a contract or warranty has already allocated the risk. See, e.g., Kelly v. Georgia Pac. LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009); N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Land v. Tall House Bldg. Co., 165 N.C. App. 880, 882–85, 602 S.E.2d 1, 3–4 (2004); Moore v. Coachmen Indus., Inc., 129 N.C. App. 389, 401–02, 499 S.E.2d 772, 780 (1998); Warfield v. Hicks, 91 N.C. App. 1, 9–10, 370 S.E.2d 689, 694 (1988). The economic loss rule precludes a tort action "against a party to a contract who simply fails to properly

8

perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." Spillman v. Am. Homes of Mocksville, Inc., 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992).

The economic loss rule confines parties to the contract's terms when seeking redress concerning the contract's subject matter. See Kelly, 671 F. Supp. 2d at 791–92. The economic loss rule recognizes that parties to a contract generally do not become each others fiduciaries. See Broussard, 155 F.3d at 347 ("'parties to a contract do not thereby become each others' fiduciaries; [therefore,] they generally owe no special duty to one another beyond the terms of the contract.'" (quoting Branch Banking & Trust Co., 107 N.C. App. at 61, 418 S.E.2d at 699)). Likewise, the rule prevents a party from seeking an extra-contractual tort remedy in an attempt to avoid a contract's allocation of risk. See Moore, 129 N.C. App. at 401–02, 499 S.E.2d at 780; see also Reece v. Homette Corp.,110 N.C. App. 462, 466–67, 429 S.E.2d 768, 770 (1993). When injury occurs to the subject matter of a contract, "[i]t is the law of contract and not the law of negligence which defines the obligations and remedies of the parties . . . ." Spillman, 108 N.C. App. at 65, 422 S.E.2d at 742. For a party to pursue a tort claim stemming from a contract, a plaintiff "must allege a duty owed him by [a] defendant separate and distinct from any duty owed under a contract." Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C.1997) (quotation omitted); see Kelly, 671 F. Supp. 2d at 791–96.

LRP's negligent misrepresentation and negligence claims are based solely on Westfield's alleged negligence in performing its duties under the insurance contract. See Compl. ¶¶ 62–77. LRP does not allege any duties that Westfield owed to LRP that are "separate and distinct" from the contract. Vanwyk Textile Sys., B.V., 994 F. Supp. at 362. Accordingly, the economic loss rule bars LRP's negligent misrepresentation and negligence claims. See Kelly, 671 F. Supp. 2d at 796; accord Geico Cas. Co. v. Arce, 333 F. App'x 396, 397–98 (11th Cir. 2009) (per curiam)

(unpublished); All Erection & Crane Rental Corp. v. Acordia Nw., Inc., 162 F. App'x 554, 559 (6th Cir. 2006) (per curiam) (unpublished); Maynard Co-op. Co. v. Zeneca, Inc., 143 F.3d 1099, 1100–03 (8th Cir. 1998); Bailey Farms, Inc. v. NOR-AM Chem. Co., 27 F.3d 188, 190–92 (6th Cir. 1994). Thus, the court grants summary judgment to Westfield on LRP's negligent misrepresentation and negligence claims.

II.

In sum, the court GRANTS defendant's motion for partial summary judgment [D.E. 26]. The sole remaining claim is LRP's breach of contract claim concerning damage to the roof.

SO ORDERED. This **31** day of October 2014.

JAMES C. DEVER III
Chief United States District Judge

Case 4:13-cv-00094-D   Document 34   Filed 10/31/14   Page 10 of 10